**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division**

KATHERINE L.N.T.,[1]
    Plaintiff,

        v.                        Civil No. 3:20-cv-00983 (REP)

KILOLO KIJAKAZI,
Acting Commissioner of Social Security,
    Defendant.

**REPORT AND RECOMMENDATION**

This is an action seeking review of the decision of the Commissioner of Social Security ("Commissioner") denying Plaintiff's application for a period of disability insurance benefits under the Social Security Act ("Act"). At the time of her application date, Plaintiff was a fifty-five-year-old high school graduate who previously worked as an office manager. (R. at 132, 147-48.) Plaintiff alleges she is unable to work because of rheumatoid arthritis, anxiety disorder, depression, high cholesterol, skin disorder, stomach problems, Celiac disease, hearing loss, and vision problems. (R. at 146.)

On November 19, 2019, an Administrative Law Judge ("ALJ") issued a decision finding that Plaintiff was not disabled. (R. at 10-24.) This matter comes before the Court for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) on cross motions for summary judgment, rendering the matter ripe for review.[2]

---

[1] The Committee on Court Administration and Case Management of the Judicial Conference of the United States has recommended that, due to significant privacy concerns in social security cases, federal courts should refer to claimants only by their first names and last initials.

[2] The administrative record in this case remains filed under seal, pursuant to E.D. Va. Loc. R. 5 and 7(C). In accordance with these rules, the Court will exclude personal identifiers such as Plaintiff's social security number, the names of any minor children, dates of birth (except for year

1

Plaintiff now seeks review of the ALJ's decision, arguing that the ALJ's decision is not supported by substantial evidence. (Pl.'s Mem. Supp. Mot. Summ. J. 1, ECF No. 27 ("Pl.'s Mem.").) For the reasons set forth below, the Court RECOMMENDS that Plaintiff's Motion for Summary Judgment (ECF No. 26) be DENIED, that Defendant's Motion for Summary Judgment (ECF No. 29) ("Def.'s Mem.") be GRANTED and the final decision of the Commissioner be AFFIRMED.

## I. PROCEDURAL HISTORY

Plaintiff filed an application for disability insurance benefits on July 26, 2018, alleging disability beginning November 2, 2015. (R. at 132.) The Social Security Administration ("SSA") denied Plaintiff's claim on September 17, 2018 (R. at 91) and again upon reconsideration on November 16, 2018. (R. at 103.) Plaintiff requested a hearing before an ALJ, and a hearing was held on October 21, 2019. (R. at 32-60, 110.) On November 19, 2019, the ALJ issued a written opinion, holding that Plaintiff was not disabled under the Act. (R. at 24.) Plaintiff requested review of the ALJ's decision. On October 21, 2020, the SSA Appeals Council denied Plaintiff's request which rendered the ALJ's decision as the final decision of the Commissioner. (R. at 1-4.) Plaintiff now seeks judicial review pursuant to 42 U.S.C. § 405(g).

## II. STANDARD OF REVIEW

In reviewing the Commissioner's decision to deny benefits, a court will affirm the SSA's "disability determination 'when an ALJ has applied correct legal standards and the ALJ's factual findings are supported by substantial evidence.'" *Mascio v. Colvin*, 780 F.3d 632, 634 (4th Cir.

---

of birth), and financial account numbers from this Report and Recommendation, and will further restrict its discussion of Plaintiff's medical information only to the extent necessary to properly analyze the case.

2015) (quoting *Bird v. Comm'r of Soc. Sec. Admin.*, 699 F.3d 337, 340 (4th Cir. 2012)). Substantial evidence requires more than a scintilla but less than a preponderance of evidence and includes the kind of relevant evidence that a reasonable mind could accept as adequate to support a conclusion. *Hancock v. Astrue*, 667 F.3d 470, 472 (4th Cir. 2012); *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). Indeed, "the substantial evidence standard 'presupposes . . . a zone of choice within which the decision makers can go either way, without interference by the courts. An administrative decision is not subject to reversal merely because substantial evidence would have supported an opposite decision.'" *Dunn v. Colvin*, 607 F. App'x. 264, 274 (4th Cir. 2015) (quoting *Clarke v. Bowen*, 843 F.2d 271, 272-73 (8th Cir. 1988)).

To determine whether substantial evidence exists, the court must examine the record as a whole, but may not "undertake to reweigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [ALJ]." *Hancock*, 667 F.3d at 472 (quoting *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005)).

In considering the decision of the Commissioner based on the record as a whole, the court must take into account "whatever in the record fairly detracts from its weight." *Breeden v. Weinberger*, 493 F.2d 1002, 1007 (4th Cir. 1974) (quoting *Universal Camera Corp. v. N.L.R.B.*, 340 U.S. 474, 488 (1951)). The Commissioner's findings as to any fact, if substantial evidence in the record supports the findings, bind the reviewing court to affirm regardless of whether the court disagrees with such findings. *Hancock*, 667 F.3d at 476. If substantial evidence in the record does not support the ALJ's determination or if the ALJ has made an error of law, the court must reverse the decision. *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987).

SSA regulations set forth a five-step process that the agency employs to determine whether disability exists. 20 C.F.R. § 404.1520(a)(4); *see Mascio*, 780 F.3d at 634-35 (describing the ALJ's

five-step sequential evaluation). To summarize, at step one, the ALJ looks at the claimant's current work activity. § 404.1520(a)(4)(i). At step two, the ALJ asks whether the claimant's medical impairments meet the regulations' severity and duration requirements. § 404.1520(a)(4)(ii). Step three requires the ALJ to determine whether the medical impairments meet or equal an impairment listed in the regulations. § 404.1520(a)(4)(iii). Between steps three and four, the ALJ must determine the claimant's residual functional capacity, accounting for the most the claimant can do despite her physical and mental limitations. § 404.1545(a).

At step four, the ALJ assesses whether the claimant can perform her past work given her residual functional capacity. § 404.1520(a)(4)(iv). The burden of proof remains with the claimant through step four of the analysis, such that she must prove that her limitations preclude him from past relevant work. *Bowen v. Yuckert,* 482 U.S. 137, 146 n.5 (1987); *Hancock*, 2012 U.S. App. LEXIS 128, at *3 (citation omitted). If such work can be performed, then benefits will not be awarded, and the analysis ends at step four. §§ 416.920(e), 404.1520(e). However, if the claimant cannot perform her past work, the analysis proceeds to step five, and the burden then shifts to the Commissioner to show that the claimant is capable of performing other work that is available in the national economy. § 404.1520(a)(4)(v).

### III. THE ALJ'S DECISION

The ALJ followed the five-step evaluation process established by the Act in analyzing Plaintiff's disability claim. (R. at 12-24.) *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); *Mascio v. Colvin*, 780 F.3d 632, 636 (4th Cir. 2015) (describing the ALJ's five-step sequential evaluation).

At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity during the relevant period, November 2, 2015 through March 31, 2016. (R. at 12.) At step two, the ALJ determined that during the relevant period, Plaintiff suffered from the following

4

severe impairments: "spine disorder, peripheral neuropathy, gastritis and duodenitis, and other disorders of the gastrointestinal system (20 CFR 404.1520(c))." (R. at 12.) At step three, the ALJ determined that none of these impairments, individually or in combination, met or equaled a disability listing in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. at 15.)

The ALJ then determined Plaintiff's residual functional capacity. (R. at 16.) Based on the evidence in the record, the ALJ determined that Plaintiff retained the ability "to perform light work as defined in 20 CFR 404.1567(b), except she can frequently handle and finger with the right hand. The [Plaintiff] can frequently stoop and climb ramps and stairs; and occasionally climb ladders, ropes, or scaffolds. Additionally, she can tolerate occasional exposure to vibration." (R. at 16.) The ALJ explained that she determined Plaintiff's residual functional capacity after considering "all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence," in accordance with the regulations. (R. at 16.)

Based on her residual functional capacity findings, the ALJ concluded at step four that Plaintiff was not capable of performing past relevant work as a grocery store clerk. (R. at 22.) She explained that Plaintiff's past work was classified as semi-skilled work performed at the heavy exertion level, which was greater than Plaintiff's residual functional capacity. (R. at 22.)

At step five, the ALJ found that there are other jobs that exist in significant numbers in the national economy that Plaintiff can perform. (R. at 23.) The ALJ considered the testimony of a vocational expert, who opined that Plaintiff could perform the requirements of representative occupations such as sorter, router, and general office helper. (R. at 23.) Therefore, the ALJ determined that Plaintiff was not disabled under the Act. (R. at 24.)

## IV. ANALYSIS

Plaintiff argues that the ALJ's decision "is unsupported by substantial evidence as she failed to rely on any medical opinion and instead made up the [residual functional capacity] whole cloth." (Pl.'s Mem. at 1.) In support, Plaintiff avers that once the ALJ determined that the medical opinion evidence on record was unpersuasive, she "should have contacted one of Plaintiff's numerous treating physicians, or in the alternative ordered a consultative examination," because "[w]ithout such opinion evidence the [residual functional capacity] determination is not based on substantial evidence." (Pl.'s Mem. at 10.) Thus, Plaintiff reasons that the ALJ failed to develop the record fully, as "the ALJ did not have the medical opinion needed to make a [residual functional capacity] which incorporated all of Plaintiff's limitations." (Pl.'s Mem. at 10.) In addition, Plaintiff briefly asserts that the record demonstrates she should be limited to sedentary work, and that this evidence, in addition to her age, shows that she would "GRID out and be found disabled." (Pl.'s Mem. at 11.)

Defendant responds that the ALJ: (1) fully developed the record; (2) did not require additional information not already in her possession; and (3) was not required by the regulations to rely on any medical opinion when evaluating Plaintiff's claim. (Def.'s Mem. at 11-16.) For the reasons that follow, this Court finds that the ALJ fully developed the record and substantial evidence supports the ALJ's residual functional capacity findings.

### A.     The ALJ Fully Developed the Record.

In addition to applying the correct legal standards in her analysis, an ALJ has an obligation "to explore all relevant facts and inquire into the issues necessary for adequate development of the record, and cannot rely only on the evidence submitted by the claimant when that evidence is inadequate." *Cook v. Heckler*, 783 F.2d 1168, 1173 (4th Cir. 1986) (emphasis added). Since *Cook*,

the Fourth Circuit has clarified that an ALJ "is not required to act as plaintiff's counsel," but must "fully and fairly develop the record" once a claimant has made a prima facie showing of entitlement to benefits. *Rice v. Chater*, No. 94-2001, 1995 U.S. App. LEXIS 9829, at *5 (4th Cir. May 1, 1995) (citations omitted); *see also Bell v. Chater*, 1995 U.S. App. LEXIS 14322, at *12-13 (4th Cir. June 9, 1995).

To determine "whether an ALJ has fully and fairly developed the record, the proper inquiry is whether the record contains sufficient evidence." *Anderson v. Astrue*, No. 10-3084, 2011 U.S. Dist. LEXIS 141527, at *6 (W.D. Ark. Oct. 4, 2011) (citations omitted). Where substantial evidence in the record supports an ALJ's finding as to a particular issue, the record is considered to be sufficiently developed. *See Mink v. Apfel*, 2000 U.S. App. LEXIS 11559, at *5 (4th Cir. May 22, 2000). However, the absence of substantial evidence to support an ALJ's finding not only exposes an ALJ's determination to potential reversal, but also may indicate that an ALJ has failed to develop the record sufficiently. *See Loving v. Astrue*, Civil Action No. 3:11cv411-HEH, 2012 U.S. Dist. LEXIS 134906 (E.D. Va. Sep. 20, 2012).

The agency requires the ALJ to use a "reasonable articulation standard" that "does not require written analysis about how [the ALJ] considered each piece of evidence." 82 Fed. Reg. 5844-01, at 5858. An ALJ has the discretion to seek additional or clarifying information if the information already in her possession is insufficient to determine whether the claimant is disabled or not. 20 C.F.R. §§ 404.1520b(b)(2)(i), 416.920b(b)(2)(i); *see e.g.,* 20 C.F. R. §§ 404.1520b(b)(1), 416.920b(b)(1) ("If any of the evidence in your case record, including an medical opinion(s) . . . . is inconsistent, we will consider the relevant evidence and see if we can determine whether you are disabled based on the evidence we have.").

7

An ALJ's failure to adequately develop the record warrants remand where the failure results in prejudice or unfairness to the claimant. *Sims v. Harris*, 631 F.2d 26, 28 (4th Cir. 1980); *see also Brown v. Shalala*, 44 F.3d 931, 935 (11th Cir. 1995); *Mann v. Astrue*, No. 5:07-201, 2008 U.S. Dist. LEXIS 26618, at *17 (S.D.W. Va. Mar. 31, 2008). In other words, remand is improper "unless the claimant shows that he or she was prejudiced by the ALJ's failure. To establish prejudice, a claimant must demonstrate that he or she could and would have adduced evidence that might have altered the result." *Carey v. Apfel*, 230 F.3d 131, 142 (5th Cir. 2000) (citations omitted); *Roseberry v. Colvin*, 2016 U.S. Dist. LEXIS 57787, at *14 (S.D.W. Va. Mar. 31, 2008).

A review of the administrative record demonstrates that the ALJ properly developed the record. First, the ALJ informed Plaintiff of her duty to identify any treatment she received that was not reflected in the file and to obtain any additional files before a decision was issued. (R. at 33-34, 173-74.) Plaintiff's attorney represented that Plaintiff had an opportunity to review the file before the hearing and declined to present any additional evidence. (R. at 33-34.) Second, the ALJ questioned Plaintiff extensively about her education, vocation, medical background, and symptoms. (R. at 36-48.) The ALJ learned that Plaintiff has a high school diploma, reads both fiction and non-fiction, and can do basic-level math, which suggests that she is not amongst those claimants of limited education or cognition for whom an ALJ's duty to develop the record is even greater. (R. at 36-48.)

Third, the ALJ's review of Plaintiff's disability determination also demonstrates the completeness of the record. The ALJ discussed Plaintiff's history of hyperlipidemia, cardiomyopathy, hearing loss, psoriasis with psoriatic arthritis. (R. at 13.) She explained that the medical record generally indicates normal cardiovascular findings, conservative treatment, normal hearing examinations, normal mobility, and normal skin. (R. at 13.)

The ALJ also analyzed Plaintiff's records within the relevant time period regarding Plaintiff's anxiety and depression. (R. at 14.) The ALJ acknowledged the records which indicated that Plaintiff had discussed with her primary care physician her depressed mood, weight loss, anxiety, and panic attacks. (R. at 14.) The ALJ further explained how Plaintiff followed up with her primary care physician to adjust her medication three times but did not see any other clinician for mental health complaints between her last follow up and the date last insured. (R. at 14.) The ALJ noted that throughout the record Plaintiff was found on examination to be pleasant, cooperative, alert, and oriented without suicidal or homicidal ideations. (R. at 14.)

Additionally, the ALJ analyzed the objective evidence regarding Plaintiff's spine disorder. (R. at 15-16, 19-20.) She cited to examinations that revealed no nerve root compression and referenced how providers noted grossly normal lumbar spine range of motion, motor strength, reflexes, and intact sensation. (R. at 15-16.) Moreover, the ALJ pointed out that Plaintiff demonstrated a negative straight leg test. (R. at 15-16.)

Based on the evidence available, the ALJ determined that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms," but that Plaintiff's "statements concerning the intensity, persistence, and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record . . . ." (R. at 17.) Plaintiff argues that the ALJ "draws a medical conclusion that Plaintiff's overall impartments [sic] were severe but also that her medical condition improved," which "is clearly the ALJ inserting her own opinion rather than relying on those of a medical expert." (Pl.'s Mem. at 8.)

A review of the ALJ's decision and the accompanying record shows that this issue was sufficiently explored. To the extent that Plaintiff argues that the ALJ "inserted her own lay medical conclusion as to Plaintiff's medical condition", it is clear that the ALJ did not impermissibly

9

"interpret[]raw medical data", but developed and reviewed the available evidence in accordance with the regulations. (R. at 12-22.) (Pl.'s Mem. at 9-10.) Plaintiff has not demonstrated prejudice resulting from any alleged failure of the ALJ to fully develop the record, nor has she identified additional medical records in existence within the relevant period for the ALJ to obtain. Instead, Plaintiff alleges that the ALJ should have explored her medical conditions more fully or sought further information to assist her in her findings. (Pl.'s Mem. at 9-10.) This Court disagrees and finds that the ALJ was not required to develop the record further where there was sufficient evidence that enabled the ALJ to make a disability determination.

> **B.  The ALJ Did Not Err in Her Residual Functional Capacity Assessment When She Evaluated the Medical Opinions.**

Similarly, Plaintiff alleges that substantial evidence does not support the ALJ's residual functional capacity because the ALJ found the medical opinions of Richard Surrusco, M.D. ("Dr. Surrusco") and William Rutherford, Jr., M.D. ("Dr. Rutherford") unpersuasive.[3] (Pl.'s Mem. at 7, 11.) Plaintiff reasons that "[w]ithout a medical opinion, it is impossible to know the full extent of Plaintiff's limitations." (Pl.'s Mem. at 11.) In her reply brief, Plaintiff reasons that "the ALJ did not explain how the evidence cited resulted in the limitations found," and therefore did not "build a logical bridge from the evidence to her conclusion that Plaintiff was not disabled." (Pl.'s Reply Br. at 2, ECF No. 30.)

For social security disability cases filed after March 27, 2017, an ALJ evaluates medical opinions in accordance with 20 C.F.R. § 416.920c.3. Medical opinions are evaluated for

---

[3] Plaintiff challenges the ALJ's assessment of the medical opinion evidence regarding Plaintiff's physical limitations by the State medical consultants (i.e., Dr. Surrusco and Dr. Rutherford). Plaintiff does not appear to challenge the ALJ's assessment of the opinions of Richard J. Milan, Jr., Ph.D. ("Dr. Milan") and Howard S. Leizer, Ph.D. ("Dr. Leizer"), who are the State psychological consultants. Therefore, the Court will not address the opinion evidence offered by Dr. Milan and Dr. Leizer regarding Plaintiff's mental health limitations.

10

supportability, consistency, relationship with the claimant (including length of the treatment, relationship, frequency of examinations, purpose of the treatment relationship, extent of the treatment relationship, and examining relationship), specialization, and other factors that tend to support or contradict a medical opinion. The most important factors are supportability and consistency. 20 C.F.R. § 416.920c(b) and (c). An ALJ does not defer or give specific evidentiary weight to any medical opinion, including those from a claimant's medical source. 20 C.F.R. § 416.920c(a). Although the amended regulations no longer discuss the "weight" given to medical opinions, an ALJ's reason for finding an opinion persuasive or unpersuasive still must be supported by substantial evidence. Because Plaintiff filed her application after March 27, 2017, the revised regulations apply in this case.

The crux of Plaintiff's argument is that since the ALJ found the opinions of Dr. Surrusco and Dr. Rutherford to be unpersuasive as to Plaintiff's limitations, there is insufficient evidence to support the ALJ's findings of the Plaintiff's residual functional capacity. (Pl.'s Mem. at 7-8.) Plaintiff reasons that, absent any persuasive medical opinion, the ALJ's decision lacked evidence "as to Plaintiff's functional limitations to provide insight as to how Plaintiff's impairments impacted her ability to function." (Pl.'s Mem. at 2.)

Under the regulations promulgated for claims filed after March 27, 2017, an ALJ need not "defer . . . to any medical opinion." 20 C.F.R. §§404.1520c(a), 416.920c(a). In this case, Dr. Surrusco and Dr. Rutherford opined that there was insufficient evidence to evaluate the claimant's application for disability insurance benefits. (R. at 72 (Dr. Surrusco explaining that "there is not enough information prior to the [date last insured] and no [activities of daily living] forms to fully assess functioning. There is insufficient evidence prior to the claimant's [date last insured]."), R.

11

at 84 ("Dr. Rutherford noting "there is insufficient evidence to determine functionality in [the relevant] timeframe.").)

In her analysis of these doctors' opinions, the ALJ explained that these statements are "not supported by the consultants' review of the record or consistent with the record as a whole." (R. at 22.) Overall, the ALJ found that the record contained sufficient evidence to evaluate Plaintiff's application for disability insurance benefits and described how the record contained treatment notes indicating Plaintiff's severe musculoskeletal, neurological, and gastrointestinal conditions. (R. at 22.) The ALJ added that Plaintiff's symptoms improved with conservative treatment and assessed her residual functional capacity accordingly. (R. at 22.)

In assessing Plaintiff's residual functional capacity, the ALJ cited specific medical and nonmedical evidence. (R. at 12-22.) With respect to Plaintiff's gastrointestinal issues, the ALJ discussed Plaintiff's positive test for Celiac disease, and how Plaintiff's diarrhea was resolved when she followed a gluten free diet. (R. at 21.) Further, the ALJ discussed in detail Plaintiff's back pain and neuropathy. She first noted how Plaintiff had both a cervical spine x-ray and lumbar x-ray after she suffered injuries to her back, shoulders, and neck in a motor vehicle accident on February 25, 2015. (R. at 18, citing R. at 255, 606-07.) The imaging showed "relatively mild" disc narrowing and spondylosis in the mid and lower lumbar and cervical spine, but no fracture, subluxation, or destructive lesions. (R. at 607.) Although the x-rays showed degenerative facet joint changes in her cervical and lumbar spine, Plaintiff's sacroiliac joints remained patent. (R. at 607.) At her March 17, 2015 appointment, Plaintiff's provider noted, "[o]verall patient is improved, but would benefit from [physical therapy]." (R. at 605.) An April 2015 treatment note indicated that Plaintiff's back spasms improved, and she was told to continue with her physical therapy and core strengthening. (R. at 601.) The ALJ noted that Plaintiff reported pain in the

12

bilateral thighs and intermittent numbness and tingling of the right upper extremity. (R. at 18, citing to R. at 599-601.) She also reported reduced muscle strength in her right-hand flexors, but denied dropping things, and noted that she is baseline left-handed despite writing with her right. (R. at 18, citing R. at 601.)

In May 2015, Plaintiff reported that she "is feeling worse with physical therapy" and that her back pain was not improving. (R. at 598.) Imaging of her lumbar spine in June 2015 showed mild diffuse disc bulging and degenerative facet changes, but no significant disc bulging at the lumbosacral joint. (R. at 260.) A neurologist in May 2015 performed an EMG and NCS on Plaintiff's right extremity, which revealed evidence of a mild-to moderate right-sided medial mono neuropathy at her right wrist, but no evidence of active and ongoing denervation. (R. at 593, 598.) Her neurologist prescribed a right wrist splint to manage her symptoms, which were attributed to carpal tunnel syndrome. (R. at 598.) The ALJ also noted that Plaintiff told her primary care provider that she had "increased muscle spasms in her right low back and right buttock, as well as weakness in her lower extremities." (R. at 18, citing R. at 596.) On examination, she had some tenderness and spasms in the medial low back, no swelling, and no tenderness or pain in her cervical spine. (R. at 19, citing R. at 598.)

A subsequent June 2015 MRI revealed an annular tear at L3-4, but only mild diffuse disc bulging and degenerative facet joint changes. (R. at 19, citing R. at 259-60.) At an orthopedic evaluation, Plaintiff reported lumbar pain radiating into her right hip and right leg and improved strength in her right leg. (R. at 19, citing to R. at 211.) Her orthopedist prescribed Naproxen for when her pain flared up, and on a follow up appointment, the orthopedist prescribed pain medication and encouraged her to complete additional physical therapy after determining that she was not a good candidate for surgery. (R. at 209.) By September 2015, Plaintiff's back "was non-

tender" and she had a normal active full range of motion throughout all extremities. (R. at 19, citing R. at 270.) The ALJ pointed out that Plaintiff's neck was also non-tender with a full range of motion." (R. at 19, citing R. at 270.)

Plaintiff continued to report lumbar pain in November 2015, although she exhibited a normal gait and was in no acute distress upon examination. (R. at 19, citing R. at 207.) Plaintiff reportedly developed a kidney stone while going to physical therapy but resumed her exercises and continued to take hydrocodone for pain. (R. at 207.) The ALJ described Plaintiff's normal range of motion in the lumbar spine and hips, as well as normal motor and sensory testing and symmetrical reflexes in the lower extremities. (R. at 19.) At Plaintiff's February 2016 appointment, she "reported attending physical therapy and doing her exercises at home. [Plaintiff] reported that she was 'doing much better.' Although [Plaintiff] still had mild pain in her buttock after sitting, her pain had 'largely resolved.'" (R. at 19, citing R. at 205.)

The ALJ continued to summarize Plaintiff's appointments in February and March 2016, during which Plaintiff was found to have "intact sensation and no gross neurological abnormalities." (R. at 20, citing R. at 295, 560.) She cited Plaintiff's records indicating that her back had no evidence of trauma or deformity, was non-tender to palpitation, and she had a normal range of motion and non-tenderness in her extremities, including full muscle tone and strength. (R. at 20, citing R. at 295, 560.)

The ALJ also discussed the nonmedical evidence, such as Plaintiff's activities of daily living. (R. at 17.) The ALJ noted that Plaintiff testified she drove once per week to the store, went to church, handled her own personal care, walked with friends, and did some household chores. (R. at 17-21.) *See generally* Titles II and XVI: Assessing Residual Functional Capacity In Initial Claims, SSR 96-8P, 1996 WL 374184, at *7 (July 2, 1996) (a residual functional capacity

14

"assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts and (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)."). In doing so, the ALJ sufficiently identified the evidence that supported her conclusion and built an accurate and logical bridge from that evidence to her conclusion that Plaintiff was able "to perform light work as defined in 20 CFR 404.1567(b), except she can frequently handle and finger with the right hand. The [Plaintiff] can frequently stoop and climb ramps and stairs; and occasionally climb ladders, ropes, or scaffolds. Additionally, she can tolerate occasional exposure to vibration." (R. at 14-23.)

A review of the ALJ's explanation of Plaintiff's medical and nonmedical evidence demonstrates that the ALJ thoroughly reviewed the available record and determined, using the supportability and consistency factors articulated above, that the medical opinions of Dr. Surrusco and Dr. Rutherford were not persuasive because there was ample evidence for them to evaluate Plaintiff's application for disability benefits. Plaintiff's generalized assertion that the ALJ's opinion evaluations left her understanding of the medical evidence inadequate fails to show how the ALJ ran afoul of applicable law and resulted in harmful error. *See Lemmonds v. Berryhill*, No 3:16-CV-120-RLV-DCK, 2017 WL 9516603, at *5 (W.D.N.C. Feb. 21, 2017) ("Plaintiff clearly disagrees with the ALJ's decision, but fails to offer any persuasive argument or authority that the ALJ did not follow the proper legal standards and/or did not rely on substantial evidence in reaching his determination"). As the ALJ followed the revised rules, explained her evaluations on opinion evidence, and built a "logical bridge from the evidence to [her] conclusion," the ALJ's opinion evaluations are supported by substantial evidence. *Monroe v. Colvin*, 826 F.3d 176, 189 (4th Cir. 2016). Therefore, this Court finds no error in the ALJ's residual functional capacity evaluation and her evaluation of the medical opinion evidence.

      **C.**      **The ALJ's Conclusion That There Are Jobs That Exist in Significant Numbers in the National Economy that Plaintiff Can Perform is Supported by Substantial Evidence and Application of the Correct Legal Standard.**

Plaintiff briefly argues that the ALJ should have deemed her disabled pursuant to the Medical Vocational Guidelines, Rule 201.12. (Pl.'s Mem. at 11.) Specifically, Plaintiff contends that the ALJ should have limited her to sedentary work because her back pain "only allows her to sit for 6-8 hours." (Pl.'s Mem. at 11.) This evidence, in addition to her age, shows that the ALJ failed to direct a finding of disabled pursuant to 20 C.F.R. Part 404, Subpart P., App'x 2, Section 201.12 ("Grid Rule 201.12"). (Pl.'s Mem. at 11.)

The Commissioner, through the ALJ, may meet her burden of proving that significant numbers of jobs exist in the national economy through the testimony of a vocational expert, *or* thorough proper reference to the Grid rules. *Coffman v. Bowen*, 829 F.2d 514, 518 (4th Cir. 1987) (citing *Heckler v. Campbell*, 461 U.S. 458, 461, 103 S. Ct. 1952, 76 L. Ed. 2d 66 (1983)) (emphasis added). The Grid rules are published tables and administrative rules that can be used in certain cases to "direct[] a conclusion [at step five] as to whether the individual is or is not disabled." 20 C.F.R. pt. 404, subpt. P, app. 2 § 200.00(a). In such cases, the Grid rules help streamline the disability determination by providing competent evidence that a significant number of jobs exist (or do not exist) in the national economy that the claimant can perform considering his or her exertional residual functional capacity and vocational profile. *See id.* § 200(a), (d). The Grid rules may obviate the need for testimony from a vocational expert. Importantly, however, the Grid rules are dispositive of whether the claimant is disabled only where "the claimant suffers from purely exertional impairments." *Aistrop v. Barnhart*, 36 F. App'x 145, 146 (4th Cir. 2002). The Commissioner may rely on the Grid rules alone to direct a finding of "Not Disabled" only in cases where the claimant retains the physical strength to perform "the full range of work at a given

16

exertional level." *Id.*; *see also* 20 C.F.R. §§ 404.1569a(b), 416.969a(b); *Golini v. Astrue*, 483 F. App'x 806, 808 (4th Cir. 2012) (per curiam). Where the claimant "suffer[s] from nonexertional impairments" or from "a combination of exertional and nonexertional impairments," the Grid rules "may be used only as a guide," and the Commissioner "must prove through expert vocational testimony that jobs exist in the national economy which the claimant can perform." *Aistrop*, 36 F. App'x at 146-47; *see also Grant v. Schweiker*, 699 F.2d 189, 192 (4th Cir. 1983) (in such cases, the Grid rules are "not conclusive" and "full individualized consideration must be given to all relevant facts of the case"); 20 C.F.R. §§ 404.1569a(c)–(d) d), 416.969a(c)–(d).

The Grid rules provide numbered tables for the sedentary, light, and medium levels (Tables 1, 2, and 3, respectively), and separate rules for the heavy and very heavy levels. 20 C.F.R. Pt. 404, Subpt. P, App. 2. If the claimant has sedentary, light, or medium exertional capacity, the ALJ must first determine which Grid table to use. 20 C.F.R. Pt. 404, Subpt. P, App. 2. Next, based on the claimant's age, education and previous work experience, rules within the Grid table direct a finding of "disabled" or "not disabled." *Id.* The ALJ must consider the claimant's residual functional capacity, age, education, and work experience in conjunction with the Grid rules. 20 C.F.R. Pt. 404, Subpt. P, App. 2. Based on Plaintiff's education and previous work experience, the Grid rules for light and sedentary capacity direct the ALJ to reach opposite conclusions with regard to her disability as of her fiftieth birthday.

Here, the ALJ found that Plaintiff had at least a high school education and performed past relevant work as a grocery stock clerk at the semi-skilled, heavy exertional level. (R. at 22.) For a claimant with the maximum sustained work capability of light work, the Grid rules direct a finding of "not disabled" when the claimant's age falls between the ages of 50 and 54, and she has at least a high school education, regardless of the possibility of direct entry into skilled work and the

17

transferability of her previous job skills. 20 C.F.R. Pt. 404, Subpt. P, App. 2, Rules 202.13-15. In contrast, for a claimant with the maximum sustained work capability of sedentary work, the Grid rules direct a finding of "disabled" when her age falls between the ages of 50 and 54, and she has at least a high school education, provided that her education does not provide for direct entry to skilled work and she has no transferrable job skills. 20 C.F.R. Pt. 404, Subpt. P, App. 2, Rules 201.12, 201.14. Thus, the difference between Plaintiff's ability to perform light work versus sedentary work leads to opposite conclusions as to whether Plaintiff must be found disabled under the Grid rules.

Plaintiff reasons that "[w]ithout a medical opinion, it is impossible to know the full extent of Plaintiff's limitations," and that the ALJ should have found Plaintiff to be restricted to sedentary work instead, since Plaintiff "testified that her back pain only allows her to sit for 6-8 hours." (Pl.'s Mem. at 11.) Consequently, Plaintiff argues, she is limited to sedentary work, which requires walking and standing occasionally (defined as occurring from very little up to one-third of the time, or no more than two hours of an eight hour workday), and sitting for a total of six hours in an eight hour work day. (Pl.'s Mem. at 11); SSR 96-9p, 1996 SSR LEXIS 6. As stated above, however, the ALJ specifically discussed Plaintiff's exertional abilities and carefully reviewed the medical evidence to determine that Plaintiff had the residual functional capacity to perform light work. *See supra* Part IV.A. As mentioned above, the ALJ's residual functional capacity findings are supported by substantial evidence, and she adequately articulated her reasoning as to how she determined Plaintiff could perform this level of work in accordance with the regulations. *See supra* Part IV.B.

Because the ALJ properly concluded that Plaintiff was limited to light work, not sedentary work, Grid Rule 201.12 does not apply in this case. 20 C.F.R. § 416.969 ("[W]e do not apply these

18

rules if one of the findings of fact about the person's vocational factors and residual functional capacity is not the same as the corresponding criterion of a rule."). Moreover, the ALJ's residual functional capacity findings in this case include several nonexertional limitations. (R. at 16.) Therefore, "the Commissioner, in order to prevail, must be required to prove by [vocational expert] testimony that, despite the claimant's combination of nonexertional and exertional impairments, specific jobs exist in the national economy which [she] can perform." *Id.* (citing *Grant v. Schweiker*, 699 F.2d 189, 192 (4th Cir. 1983)). The Commissioner should also rely on vocational expert testimony at step five where, as here, the ALJ finds that an individual has the residual functional capacity to perform less than the full range of light work. (R. at 23.) *See Gibson v. Astrue*, No. 3:10-cv-226, 2010 U.S. Dist. LEXIS 121313, 2010 WL 4789659, at *4-*5 (E.D. Va. Oct. 27, 2010), *adopted b*y 2010 U.S. Dist. LEXIS 121305, 2010 WL 4788211 (E.D. Va. Nov. 16, 2010). The ALJ did so here. (R. at 23.)

The ALJ posed a series of hypothetical questions to the vocational expert as required by SSR 83-12, 1983 SSR LEXIS 32, regarding what jobs may exist in the national economy which Plaintiff could perform given her assessed limitations. (R. at 56-59.) The ALJ properly relied on the vocational expert's testimony that there were at least three "light exertional" occupations accounting for Plaintiff's age, education, work experience, and residual functional capacity, and the ALJ was permitted to accept this opinion. (R. at 57.) Accordingly, the ALJ's decision is supported by substantial evidence and the application of the correct legal standards. Therefore, it should be affirmed.

## V. CONCLUSION

For the reasons set forth above, the Court recommends that Plaintiff's Motion for Summary Judgment (ECF No. 26) be DENIED, that Defendant's Motion for Summary Judgment (ECF No. 29) be GRANTED and that the final decision of the Commissioner be AFFIRMED.

Let the clerk forward a copy of this Report and Recommendation to Senior United States District Judge Robert E. Payne and to all counsel of record.

## NOTICE TO PARTIES

**Failure to file written objections to the proposed findings, conclusions and recommendations of the Magistrate Judge contained in the foregoing report within fourteen (14) days after being served with a copy of this report may result in the waiver of any right to a de novo review of the determinations contained in the report and such failure shall bar you from attacking on appeal the findings and conclusions accepted and adopted by the District Judge except upon grounds of plain error.**

/s/ MRC

Mark R. Colombell
United States Magistrate Judge

Richmond, Virginia
Date: May 31, 2022